UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:23-CV-00013-EBA

SHANE ALLEN COLLIER,                                                    PLAINTIFF,

V.                          **MEMORANDUM OPINION & ORDER**

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,                         DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

INTRODUCTION

Plaintiff, Shane Allen Collier, appeals the Acting Social Security Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). [R. 1]. Alternatively, Collier requests that the Court remand this case for a new hearing on the matter. [*Id.*]. Collier alleges that the Administrative Law Judge ("ALJ") incorrectly assessed his residual functional capacity ("RFC")[1] for two reasons: (1) she failed to consider all his limitations to account for his medically established impairments supported by the record; and (2) she failed to include any mental limitations in her RFC finding and failed to explain why these limitations were excluded from this analysis. [R. 16]. The Acting Commissioner then filed his Response and own Motion for Summary Judgment. [R. 22]. The time for Collier to file a Reply in support of his motion has passed. So, this matter is ripe for review. The Court will affirm the Acting Commissioner's final decision for the reasons below.

FACTS AND PROCEDURAL HISTORY

---

[1] Residual functional capacity "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

The records for this case indicate that Shane Allen Collier previously worked as a dispatcher, guard, cashier, butcher, and van driver. [R. 13 at pgs. 43–44]. Unfortunately, he suffers from various impairments, including diabetes mellitus with peripheral neuropathy; Degenerative Disc Disease ("DDD") and herniated nucleus prolapse with radiculopathy, osteoarthritis, right patellar tendon rupture, status-post repair; right fifth metatarsal fracture; tarsal coalition, right foot; Bilateral Carpal Tunnel Syndrome ("CTS"); Chronic Obstructive Pulmonary Disease ("COPD"); and obesity. [*Id.* at pg. 34]. As a result of these impairments, Collier has not worked since July 15, 2019. [*Id.*]. He then applied for DIB on January 22, 2020. [*Id.* at pg. 31]. His application was denied on February 16, 2021, and then again upon reconsideration on July 13, 2021. [*Id.* at pgs. 31, 105, 137 (concluding that Collier was not disabled and that while he does have some limitations, they "do not prevent [him] from performing work [he has] done in the past as a Logistics Specialist.")].

Collier then requested a hearing before an Administrative Law Judge ("ALJ") on August 16, 2021. [*Id.* at pg. 138]. A hearing was held on the matter before ALJ Karen Jackson on January 11, 2022. [*Id.* at pg. 31]. After the hearing, Judge Jackson found that Collier could perform sedentary work and that he could do his "past relevant work as a dispatcher, and therefore was not disabled." [*Id.* at pgs. 37–44]. Collier requested review by the Social Security Administration's Appeals Council, but to no avail. [*Id.* at pgs. 6–8]. Because the Appeals Council declined review, the ALJ's decision became the Acting Commissioner of Social Security's final decision, which is subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

Now, Collier requests judicial review of the ALJ's decision. [R. 1]. He presents two issues in his appeal. *First*, Collier argues that the ALJ's analysis of his polyneuropathy and disc pathology are "inaccurate and contradictory" and that Judge Jackson's RFC "does not contain the appropriate

work restriction to account for the signs and symptoms stemming from the combination of all of Plaintiff's impairments[.]" [R. 16 at pgs. 4–10]. *Second*, Collier argues that Judge Jackson failed to include any mental limitations in her RFC despite evidence in the record of his mental limitations nor did she explain why such limitations were excluded from her RFC analysis and thus her decision must be reversed. [*Id.* at pgs. 10–14].

STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It's important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[2] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of

---

[2] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set

credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

ANALYSIS

In his appeal, Collier asks this Court to review whether the ALJ properly considered: (1) his polyneuropathy and disc pathology in determining his RFC; and (2) Collier's mental limitations in her RFC calculation. Both issues concern whether the ALJ's decision was based on substantial evidence as required under 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive…") (emphasis added).

The Acting Commissioner argues that Collier's arguments must fail because "substantial evidence supports the ALJ's findings throughout the sequential evaluation process." [R. 22 at pg. 1]. Furthermore, she contends that the ALJ's decision should be affirmed because "[t]he ALJ reasonably considered the evidence of Plaintiff's physical and mental impairments in finding that Plaintiff had the RFC to perform a range of sedentary work. . ." [*Id.* at pg. 3]. The Acting Commissioner is correct that the ALJ's factual findings "shall be conclusive if supported by

---

by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

(i)     At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii)    At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii)   At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv)    At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v)     At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the ALJ reaches the fifth step of the analysis, the burden

shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Collier's arguments take issue with the ALJ's consideration of his physical impairments in her RFC calculation and the fact the ALJ did not consider any mental limitations in her RFC finding or otherwise explain the exclusion of these limitations, which primarily implicates steps three and four of this analysis.

A

Collier argues that the ALJ incorrectly calculated his RFC by failing to properly consider his polyneuropathy and disc pathology. [R. 16 at pg. 4]. Pursuant to 20 C.F.R. § 404.1545(a)(3), an ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence." However, "the claimant bears the burden of proof as to the existence and severity of the limitations caused by h[is] impairments." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008) (footnote omitted). 20 C.F.R. § 416.967(a) also defines sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." As previously stated, "'[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.'" *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 648 (6th Cir. 2013) (quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)). If the ALJ's RFC determination is supported by substantial evidence, this determination is to be considered conclusive. *Id.* To determine her RFC

calculation, Judge Jackson considered multiple pieces of evidence, including Collier's testimony, his medical records, and various providers' evaluations. Each of these are discussed in turn.

### i.   JANUARY 11, 2022, HEARING

Plaintiff testified during the January 11, 2022, hearing before Judge Jackson about his work history and the physical requirements for each job. [R. 13 at pgs. 57–61]. He then testified that he suffered from constant back pain that was aggravated by "[l]ifting, bending, sitting very long, or laying very long, any sudden movement at all. . .", that his neuropathy caused him to constantly move his arms and legs even at night, diabetes, that he could only sit for 30-45 minutes at a time before being forced to get up, and that he could stand for 20 minutes. [*Id.* at pgs. 62–65]. He also described the side-effects from his medication, including nausea and dizziness. [*Id.* at pgs. 65–66]. Beyond these side-effects and physical ailments, Collier also testified that he suffered from depression and anxiety, stating that he was "depressed pretty much all the time" because he could not help his family. [*Id.* at pgs. 67–68]. Collier also stated that he required a cane to help move around due to his recent knee surgeries and clubfoot and that he requires constant help from his wife and family to accomplish daily tasks. [*Id.* at pgs. 69–71]. He then went on to describe his additional issues with his neuropathy and carpal tunnel syndrome, such as numbness he experiences in his hands that makes it difficult to hold items like his phone, pens, and cups of coffee and numbness in his feet. [*Id.* at pgs. 75–76]. Finally, Collier testified that Dr. Gutti conducted a nerve conduction test that showed moderate carpal tunnel syndrome and neuropathy, that he was considering undergoing surgery for his carpal tunnel syndrome, and that he still suffers from occasional migraines. [*Id.* at pgs. 78–79].

At the end of the hearing, Judge Jackson posed hypothetical questions to Vocational Expert Ray Burger to gauge what work Collier could accomplish. Mr. Burger first classified each job

Collier previously worked as sedentary, light, medium, or heavy work, with Collier's previous job as a dispatcher/logistics specialist being the only one classified as sedentary work. [*Id.* at pg. 82]. The following testimony then took place on the ALJ's hypothetical questions:

> And for the first hypothetical, the individual would be limited to sedentary work, occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasional stooping, kneeling, crouching, or crawling, should avoid concentrated exposure to vibration, fumes, odors, dust, gases, or poor ventilation and all exposure to hazards such as unprotected heights or dangerous machinery. Would that permit any of the past work?
> A Your Honor, for the hypothetical, the work doing the dispatching can be performed.
> Q And if we added to that the individual would be limited to frequent handling, fingering, and feeling with the bilateral upper extremities, would that still allow for that work?
> A Yes, Your Honor.
> Q Were occasional handling, fingering, feeling, would it still allow for that work?
> A No, Your Honor.
> Q And if the individual had to switch positions, required a sit/stand option, could sit 30 to 45 minutes at a time, and could stand or walk about 20 minutes at a time, would that allow for that past work?
> A No, Your Honor.

[*Id.* at pgs. 82–83].

Plaintiff's Function Report supports his testimony by stating that he cannot take care of himself, that there is no way he could work at a job due to his issues walking and sitting, and that he requires help from his family to accomplish many daily tasks. [*Id.* at pgs. 297–298]. Collier also stated in this form that his impairments prevent him from driving, from standing for an extended period, and that he suffers from depression due to all these issues. [*Id.* at pgs. 299–301]. He went on to clarify that he cannot lift over 10 pounds, he cannot use his back, squat, and bend without experiencing discomfort, that his ability to stand and walk is very limited, that he cannot go up and down stairs, and that he is constantly dropping items. [*Id.* at pg. 302].

### ii.    COLLIER'S MEDICAL RECORDS AND EXAMINATIONS

After considering these statements, the ALJ determined that Collier's medical conditions could cause the complained of symptoms, but "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . .they are inconsistent because while the evidence shows limitations, there are not that support further limitations." [*Id.* at pg. 38]. To illustrate this point, Judge Jackson discussed the medical records from multiple providers, such as Collier's primary care provider, Dr. Byron Thomas.

Over the course of several years, Plaintiff met with Dr. Byron and the medical records indicate that he experienced issues with his diabetes and neuropathy since at least 2018. [*Id.* at pg. 358]. By 2019, Collier began presenting complaints of musculoskeletal pain and he had begun experiencing decreased range of motion in his left hip. [*Id.* at pg. 382]. Later in 2019, Dr. Thomas noted that his neuropathy's "[s]everity level [was] moderate." [*Id.* at pg. 390]. However, by August of 2019, Collier's neuropathy was noted to be worsening and was classified as severe and in September, his back pain was also noted to be worsening, especially when doing activities such as bending, going downstairs, sitting, and walking. [*Id.* at pgs. 398, 406]. An imaging study in September of 2019 demonstrated degenerative changes in Collier's dorsal spine and his thoracolumbar spine area. [*Id.* at pgs. 470–72]. An MRI scan in October of 2019 also noted that "[t]here is moderate degenerative disc disease. . ." and that there was "[s]ignificant disc herniations at L1-2 and L5-S1 By October 11, 2019, Dr. Thomas' notes indicate that he felt Collier was disabled. [*Id.* at pg. 424]. Throughout the rest of 2019, Dr. Thomas continued to note Collier's back pain, diabetes, and depression as ongoing issues. [*Id.* at pgs. 433–453]. However, despite these issues, Dr. Thomas' notes indicate otherwise normal physical exams. [*See id.*]. In addition, a nerve conduction study from November of 2019 showed bilateral lower lumbar radiculopathy,

bilateral median nerve entrapment related to his carpal tunnel syndrome, and moderate diabetic polyneuropathy affecting both his lower and upper extremities. [*Id.* at pg. 910].

By August of 2020 Dr. Thomas was still noting a normal physical exam for Collier. [*Id.* at pg. 538]. However, by the end of 2020, Collier's neuropathy was noted to be severe. [*Id.* at pg. 555]. By April of 2021, Plaintiff was experiencing worsening pain in his right knee, with imaging studies indicating "[m]ild [degenerative joint disease] with purring of the patella." [*Id.* at pg. 609]. It was eventually decided that he would undergo outpatient surgery to treat his knee. [*Id.* at pg. 698]. In the later months of 2021, Plaintiff's appointments with Dr. Sujata Gutti indicate that his upper and lower extremities had intact sensation for light touch and temperature, that he was able to stand on his heels and toes without any difficulty, had a normal gait, and good coordination. [*Id.* at pgs. 803–807]. It was noted, however, that he had a reduced range of motion in his cervical and lumbar spine, but no weakness in his extremities was noted in the record. [*Id.*]. By early 2022, Collier's neuropathy was noted to be moderate in severity, but the records indicate that he was not presenting with complaints of headaches, motor weakness, and falling. [*Id.* at pg. 921].

Dr. Thomas' findings are ultimately summarized in his letter dated August 17, 2021. [*Id.* at pg. 657]. In this letter, Dr. Thomas states that Collier "suffers from significant pain in the cervical and lumbar spine" and that his condition has declined due to this pain and herniations in his lumbar and cervical spine. [*Id.*]. He also notes that his neuropathy and medication would make it difficult for him to operate a car or heavy equipment and that he "was instructed not to lift anything greater than 5-10 pounds at any time. He is never to bend, stoop, crawl, or climb." [*Id.*]. Dr. Thomas then states that he "would find it extremely difficult for him to find a position in employment that he could hold secondary to his chronic pain, constant shifting, and intermittent breaks to stand, ambulate, or lie and rest to trying to alleviate some of the pain. I feel that this

patient is disabled and would never be able to maintain a job in the work force." [*Id.*]. However, some of these findings were contradicted in Dr. Thomas' physical RFC assessment, which indicated that Collier could lift 10 pounds frequently and on occasion, that he could stand/walk and sit for 2 hours in a workday, that he stand/walk for 15 minutes at a time and sit for an hour at a time, and that he could occasionally bend, stoop, and balance. [*Id.* at pg. 775]. Because of these contradictions and the numerous physical exams over the years showing normal findings, the ALJ concluded that Dr. Thomas' findings were not persuasive. [*Id.* at pg. 42].

Other providers also examined Collier's condition. Dr. Jeffrey Uzzle, the consultative examiner, found that Collier had the RFC to lift 11-20 pounds occasionally, lift 10 pounds frequently, that he could sit, stand, and walk 30 minutes at a time and three to five hours every day, that he could occasionally use his upper and lower extremities for various activities, that he could occasionally climb stairs and ramps, and that he could occasionally to frequently operate a car. [*Id.* at pg. 497]. Dr. Uzzle also stated that Collier could travel without a companion, ambulate without a two-handed ambulatory device, and accomplish daily activities on his own. [*Id.*]. However, the ALJ did not find this assessment persuasive because "[t]he findings are not supported by the exam which found minimal limitations in the hands and the spine." [*Id.* at pg. 41].

On the other hand, Donna Farmer, M.D., and Dan Vandivier, Ph.D. also examined Plaintiff and found that he had some severe impairments due to his peripheral neuropathy, reconstructive surgery of a weight bearing joint, obesity, and spine disorders. [*Id.* at pg. 96]. They also noted that Collier suffered from depressive, bipolar, and related disorders, but these were noted to be non-severe impairments. [*Id.*]. As detailed by the ALJ's opinion:

> The physical residual functional capacity by Dr. Farmer, found that the claimant could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The claimant could sit for six hours in an eight-hour workday and stand and/or walk four six hours in an eight-hour workday. The claimant's limitations on pushing or

pulling were the same as the ability to lift and carry (Exh. B1A/15). The claimant
could occasionally climb ramps and stairs and never climb ladders, ropes, or
scaffolds (Exh. B1A/16). He could occasionally stoop, kneel, crouch, and crawl
(Exh. B1A/16). The claimant should avoid concentrated exposure to vibration, and
pulmonary irritants, and should avoid all exposure to hazards (Exh. B1A/17).

[*Id.* at pgs. 100–104]. At the reconsideration level, Jean Sutherland, M.D. and Jane F. Brake, Ph.D.

reevaluated the Plaintiff's medical condition. At this stage, Collier's anxiety and obsessive-

compulsive disorders were added as another non-severe impairment. [*Id.* at pg. 112]. Dr. Brake

noted that there was no indication that his mental condition had worsened since the initial

evaluation. [*Id.* at pgs. 112–113]. Dr. Sutherland ultimately affirmed Dr. Farmer's RFC assessment

and stated, "[t]he claimant's allegations are partially consistent with the available medical

evidence. The initial assessment by Dr. Donna Farmer appears to be well supported and very

persuasive, and is affirmed." [*Id.* at pg. 117]. Judge Jackson found Drs. Farmer's and Sutherland's

assessments persuasive. Specifically:

> The residual functional capacity findings and severe impairment findings are
> supported by a detailed narrative that analyzes the evidence and continues to
> expand on it at the reconsideration level. At both the initial and reconsideration
> level, the narrative tracks the medical evidence and makes findings consistent with
> that cited evidence. The medical opinions from both his treating doctors and the
> consultative examinations were considered, along with his activities of daily living
> (Exh. B4F; B5F; B7F; B13F).

[*Id.* at pg. 42].

Finally, the ALJ also considered a report from Plaintiff's wife, Kendra Collier. Kendra's

report details the various activities Plaintiff's family must help him with and the accommodations

that must be made for daily activities. [*Id.* at pgs. 270–276]. She also stated that "[h]e hurts about

all the time. It's hard for him to bend over. He cannot even put his own socks and shoes on without

my help. He has a bad back, hip, knee, and his feet are in really bad shape. It hurts him to sit, stand,

and lay and walk for short periods of time." [*Id.* at pg. 269]. While the ALJ acknowledged that

Kendra Collier is not a medical professional, she did consider these statements "in evaluating the claimant's abilities." [*Id.* at pg. 42]. The ALJ determined that "the findings are not persuasive that the claimant is disabled, because it, like the claimant's allegations, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." [*Id.*].

As a result of these various records and evaluations, the ALJ found the following:

> The detailed analysis above shows the longitudinal history of the claimant's treatment, showing that he has been able to perform work within the residual functional capacity. The objective medical evidence does not support the claimant's alleged symptoms of or their limiting effects. The claimant's exams are inconsistent with the claimant's allegations of disabling symptoms. The objective imaging showing that the claimant had only mild to moderate impairment in the [nerve] conduction study and MRI's of the back. (Exh. B2F/119; B15F/01; B14F/06). The physical exams have consistently demonstrated he retained good strength, range of motion with the exception of his lumbar spine and hip, and sensation (Exh. B2F; B7F; B14F; B15F). He has also shown good response to treatment from pain management and his knee arthroscopy, resulting in wider residual functional capacity (Exh. B16F). Further, looking at the claimant's reported activities of daily living, that include a wide range of activities that show few restrictions.

[*Id.* at pgs. 42–43]. The ALJ determined that, "while it appears that the claimant has suffered some limitations due to the impairments listed above, there are none that exclude him from working at the level prescribed in the residual function capacity above.. . . The record supports a reduction to the sedentary exertional level with postural, manipulative, and environmental limitations." [*Id.* at pg. 43]. Based on these findings, the ALJ ruled that Collier was not disabled because he could perform the past relevant work as a dispatcher. [*Id.* at pg. 44].

### iii.    ALJ'S ASSESSMENT OF COLLIER'S PHYSICAL LIMITATIONS.

Collier asserts that he has been diagnosed with and suffers from significant polyneuropathy and that, despite the ALJ's findings to the contrary, it has never been considered "mild." [R. 16 at pgs. 4–6]. He specifically takes issue with the fact that the ALJ "*did not include any limitations in her RFC to account for his limitations in turning his head, inability to maintain grip on objects,*

*inability to reach in all directions, and inability to finger, feel, and handle at best occasionally.*"
[*Id.* at pgs. 5–6 (emphasis in original)]. Collier also asserts the ALJ's decision was made in error
because "*the ALJ did not include any limitations in her RFC to account for Plaintiff's inability to
sit for 6 hours a day (sit/stand option) stemming from his back pain and his loss of lumbar flexion.*"
[*Id.* at pg. 7 (emphasis in original)]. Collier goes on to argue that the ALJ incorrectly interpreted
the record by stating that Dr. Thomas' notes showed "'consistently normal' findings" and that he
did not comply with Dr. Thomas' prescribed treatment; that the ALJ's adoption of the State
Agency administrative findings was in error because of how outdated and incomplete they were;
that the ALJ's decision does not take into account the fact that his medication causes dizziness and
other symptoms; and that her RFC is premised on the finding that Collier's condition has remained
constant even though the records indicate that his condition has actually deteriorated. [*Id.* at pgs.
8–10].

In opposition, the Acting Commissioner argues that the "ALJ reasonably considered the
evidence of Plaintiff's physical and mental impairments in finding that Plaintiff had the RFC to
perform a reduced range of sedentary work. . ." [R. 22 at pg. 3]. The Commissioner then states that
"the ALJ reasonably considered the evidence of Plaintiff's impairments, including regarding his
neuropathy and degenerative disc disease and herniated discs. . ." [*Id.* at pg. 6]. She then goes on
to argue that the ALJ properly cited Plaintiff's medical records to show that his neuropathy only
caused him to suffer mild to moderate impairment and that his "physical examinations consistently
demonstrated that he retained good strength and range of motion with the exception of his lumbar
spine and hip, and sensation." [*Id.* at pgs. 7–8]. Further, the ALJ considered the opinions of Drs.
Thomas and Uzzle and discounted them and was therefore "not required to include any limitations
to accommodate the discounted opinions." [*Id.* at pgs. 9–10].

Collier's RFC is to be an assessment of what he can and cannot do, not what he suffers from. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). "The ALJ is ultimately responsible for determining a claimant's RFC based on relevant medical and other evidence in the record." *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006) (citing 20 C.F.R. § 404.1546(c), § 404.1545(a)(3)). "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). "Although the opinion of a treating physician is generally accorded great weight, such deference applies only where the physician's opinion is based upon sufficient medical data." *Id.* (citing *Miller v. Sec'y of Health and Human Servs.*, 843 F.2d 221, 224 (6th Cir.1988)). Finally, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir.2005)).

Here, substantial evidence exists in the record to support the ALJ's RFC assessment. As previously alluded to, Judge Jackson did address Drs. Thomas' and Uzzle's evaluations and discounted them because the record contradicted these limitations. [R. 13 at pgs. 41–42]. Specifically, Dr. Thomas' own RFC assessment indicated that Collier could lift 10 pounds on occasion, could sit and stand two hours during the workday, that he could sit for 60 minutes at a time and stand for 15 minutes at a time, and that he could occasionally bend, stoop, and balance. [*Id.* at pg. 775]. These findings are contradicted by Dr. Thomas' own statements that Collier's need to constantly shift and move position would make it extremely difficult for him to find employment

and that he is "never to bend, stoop, crawl, or climb." [*Id.* at pg. 657]. The ALJ likewise discounted

Dr. Uzzle's assessment due to the medical records indicating minimal limitations in Collier's use

of his hands and spine. [*Id.* at pg. 41]. As the Commissioner points out in her brief, "the ALJ

considered the evidence as a whole in assessing the RFC, including his physical examination

findings and objective findings, and other factors." [R. 22 at pg. 8]. Likewise, as the Commissioner

explains in her brief, "the ALJ reasonably noted that Plaintiff's lack of adherence to suggestions of weight

loss and his weight gain in the record is inconsistent with the medical advice and inconsistent with his

allegations of disabling symptoms." [R. 22 at pg. 9]. The ALJ therefore properly articulated her

reasoning to discount these medical opinions as being inconsistent with other substantial evidence

in the record and for not accounting for the limitations they outlined in their reports.[3]

Collier also argues that the ALJ "accepted the State Agency administrative findings but

failed to address how outdated and/or unapprised of key evidence they were." [R. 16 at pg. 9]. To

begin with, "'administrative law judges must consider findings of State agency medical and

psychological consultants or other program physicians or psychologists as opinion evidence,

except for the ultimate determination about whether you are disabled.'" *McGrew v. Comm'r of

Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(f)(2)(i))). Further, in

*McGrew*, the claimant also argued that the ALJ had erred by relying on State Agency

administrative findings because they were outdated, but the Sixth Circuit held that the ALJ had

properly considered these findings by also considering medical examinations that took place after

these assessments. *Id.* Similarly, the ALJ here also considered medical examinations that took

---

[3] Collier also argues that the ALJ erred in stating that Dr. Thomas' records indicated consistently normal
findings. [R. 16 at pg. 8]. While it is true that the subjective reports in these records indicate worsening
symptoms, the records also show consistently normal physical examinations. [See R. 13 at pgs. 529, 538,
545, 635–638]. There is therefore evidence in the record to support the ALJ's conclusion that these
records contradict with Dr. Thomas' findings and to support her discounting of his opinion.

place after the state agency physicians examined Collier. [*See* R. 13 at pgs. 39–40, 42]. Considering these later examinations also indicates that Judge Jackson was aware of Collier's changing condition throughout the course of this process. As the ALJ states in her opinion, "[t]he physical exams have consistently demonstrated he retained good strength, range of motion with the exception of his lumbar spine and hip, and sensation (Exh. B2F; B7F; B14F; B15F). He has also shown good response to treatment from pain management and his knee arthroscopy, resulting in a wider residual functional capacity (Exh. B16F)." [*Id.* at pgs. 42–43]. Judge Jackson considered Collier's changing medical conditions and treatments to calculate the RFC, therefore Collier's argument that the ALJ failed to take his changing condition into account must fail.

Finally, Collier also alleges that the ALJ "never acknowledged or discussed Plaintiff's severe medication side effects of dizziness, drowsiness, and somnolence; the factors that aggravate Plaintiff's pain (especially sitting/bending); and other symptoms including his fatigue." [R. 16 at pg. 9]. However, Plaintiff has failed to demonstrate that these side-effects were not considered by the ALJ. The Sixth Circuit has held that "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000)). The ALJ found that Collier could work with restrictions and limited him to sedentary work. [R. 13 at pg. 43]. Given these restrictions and Judge Jackson's analysis of the complete medical record, Collier has presented no evidence that these side-effects were not considered in her evaluation beyond the fact they were not explicitly mentioned in her findings. At the very least, nothing has been presented to indicate that, even if these side effects were ignored, the ALJ's ultimate findings would change. The Sixth Circuit has explained that "no principle of administrative law or common

sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe

that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir.

2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)) (internal quotation marks

omitted). Therefore, based on the medical records and the evidence presented, substantial evidence

exists to support ALJ's physical RFC for Collier.

B

Collier also argues that the ALJ failed to properly consider his mental limitations when

determining the RFC in this matter. [R. 16 at pg. 11]. As Plaintiff alleges in his brief, "[t]he record,

and indeed the ALJ's own findings, thus establishes that Plaintiff has *at least some mental

limitations* associated with understanding, remembering, or applying information; interacting with

others; concentrating, persisting, or maintaining pace; and adapting or managing himself." [*Id.* at

pg. 13 (emphasis in original)]. While Plaintiff appears to acknowledge that these mental limitations

are non-severe, he maintains that "if *the ALJ's exclusion of all mental limitations from the RFC* is

found, for *any reason*, to be unreasonable as contrary to the evidence summarized above, the only

appropriate disposition of this case is a remand for further proceedings." [*Id.* at pg. 14 (emphasis

in original) (citations omitted)]. The Commissioner avers, however, that "Plaintiff's argument

misses the mark and ignores that he had the ultimate burden to show that his mental impairments

were severe *and* that they caused additional limitations in the RFC." [R. 22 at pg. 11 (emphasis in

original)]. The Commissioner goes on to argue that "the ALJ was not *required* to include any

limitations to account for his non-severe mental impairments based on the evidence." [*Id.*

(emphasis in original)].

Pursuant to 20 C.F.R. § 404.1520a(d)(1), "[i]f we rate the degrees of your limitation as

'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the

evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1522).” In addition, the ALJ is to consider all the claimant’s impairments, including those that are not severe, when determining their RFC. *See* 20 C.F.R. § 404.1545(a)(2). However, the Sixth Circuit has previously held that even if the ALJ does not explicitly consider a limitation in her RFC calculation, there is no error if the ALJ discusses the impairment in her decision and relies on RFCs from physicians that did directly analyze the impairment. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (“Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.”).

Here, Collier does not seem to challenge the classification of his mental impairment as being non-severe. [R. 16 at pgs. 13–14]. Therefore, the only issue is whether Judge Jackson properly considered this non-severe impairment in her RFC calculation or not. In her decision, the ALJ discussed that Collier “has alleged both physical and mental impairments.” [R. 13 at pg. 38]. The ALJ went on to explain that “[w]hile some of the mental impairment allegations have been discussed above in the ‘paragraph B’ criteria discussion, there is additional consideration of the mental and physical allegations. However, while there is some overlap between the two, they both paint a distinct picture for the undersigned to consider when making a determination on the claimant’s disability.” [*Id.*]. The ALJ also considered Drs. Farmer’s and Vandiver’s evaluations, which noted that Collier “did not meet the “A” criteria under the Listings and the “B” criteria evaluation showed a mild restriction in understanding, remembering, and applying information, a mild restriction in interacting with others, a mild restriction in concentration, persistence, or

maintaining pace, and a mild limitation in adapting or managing oneself (Exh. B1A/11)." [*Id.* at pg. 41]. However, the providers classified these mental impairments as a non-severe limitation. [*Id.* at pg. 96]. Judge Jackson then discussed Dr. Brake's assessment of Collier's impairments at the reconsideration level. [*Id.* at pg. 41]. As the ALJ notes, Dr. Brake "added an anxiety and obsessive-compulsive disorder as a non-severe impairment but did not alter the mental listing analysis (Exh. B4A/03)." [*Id.*]. Dr. Brake also mentions in her report that at the reconsideration level, Collier "does not allege a worsening of his mental condition. No new mental evidence to consider. Updated function form is reviewed and does not further reduce the initial assessment. The prior administrative medical finding of the initial assessment by Dr. Vandivier dated 10/28/20 remains consistent with both the initial and recon evidence and is both consistent and supported, and therefore considered more persuasive and is affirmed." [*Id.* at pg. 113]. The ALJ ultimately determined that these administrative findings were persuasive because "[t]he residual functional capacity findings and severe impairment findings are supported by a detailed narrative that analyzes the evidence and continues to expand on it at the reconsideration level. At both the initial and reconsideration level, the narrative tracks the medical evidence and makes findings consistent with that cited evidence." [*Id.* at pg. 42].

Judge Jackson also considered Dr. Leigh Ford's psychological examination and noted the following:

> On October 20, 2020, the claimant presented to Leigh A. Ford, Ph.D., for a psychological consultative examination (Exh. B4F/02-06). The claimant reported that he briefly had mental health treatment in the early 1990's but had no other mental health treatment up until six months prior to the exam when he was prescribed medication by his primary care doctor for depression and anxiety (Exh. B4F/03). He reported [t]hat he could perform his activities of daily living independently but needed help from his wife to manage the household bills and paperwork (Exh. B4F/03). The claimant also reported that he enjoyed socializing with family and that he was able to drive independently (Exh. B4F/03). His mental status exam showed a restless mood but he had an intact recent and remote memory,

normal attention and concentration, normal thought content, linear thought processes, and an average fund of knowledge (Exh. B4F/03-04). Dr. Ford stated the claimant 's "ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected by the impairment. [The claimant's] ability to tolerate stress and pressure of day-to-day employment and/or school work is affected by the impairment with moderate limitations noted (due to symptoms of anxiety and depression). [The claimant's] ability to sustain attention and concentration towards simple repetitive tasks is not affected by the impairment. [The claimant's] capacity to respond appropriately to supervision from teachers, co-workers/peers, and pressures in a work or school setting is affected by the impairment with moderate limitations noted." (Exh. B4F/04-05). These findings are not persuasive. These moderate findings are not supported by the exam showing either no limitation or at worst, a mild limitation (Exh. B4F/03-04). They are also not consistent with the other psychiatric exams in evidence, showing no more than mild limitations (Exh. B8F/02; B15F/08).

[*Id.* at pgs. 34–35]. Based on these findings, the ALJ determined that Collier's mental impairments are only mild limitations and that "the evidence does not indicate otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1))." [*Id.* at pg. 35].

While the ALJ may not have explicitly considered these mental limitations in her RFC calculation, the fact she referenced these limitations multiple times in her decision and relied on providers' evaluations that did analyze these impairments indicates that there is no error on these grounds. Much like in the *Coldiron* case, the fact the ALJ utilized these opinions in constructing Collier's RFC means that she also incorporated the effect these mental impairments had on the RFC in her decision. *See Coldiron*, 391 F. App'x at 443. As other courts in the Sixth Circuit have reinforced, "[i]n certain instances, despite an ALJ's failure to explicitly analyze non-severe conditions in the RFC section, a court may hold that the ALJ met regulatory requirements if the court can infer from the ALJ's RFC analysis that the ALJ considered all of the claimant's impairments*." Reeves v. Colvin*, No. 15-CV-1310-TMP, 2018 WL 1378523, at *4 (W.D. Tenn. Mar. 19, 2018)(citations omitted). This case is such an instance. Based on the ALJ's references to

Collier's mental impairments throughout her decision and her reliance on Drs. Farmer's, Vandiver's, and Sutherland's evaluations in calculating the RFC, Plaintiff's arguments on this issue must also fail.

CONCLUSION

Shane Collier appealed the Acting Commissioner's final decision that he is not entitled to disability insurance benefits. Collier argues that the ALJ's RFC calculation was incorrect because she failed to properly take into consideration his disc pathology and polyneuropathy and that she also failed to include his mental impairments in determining the RFC. But the record indicates that the ALJ properly considered his physical and mental impairments and that her RFC calculation is supported by substantial evidence. The Acting Commissioner's final decision is therefore AFFIRMED. A separate judgment will follow.

Signed October 31, 2023.



**Signed By:**
_**Edward B. Atkins**_  *EBA*
**United States Magistrate Judge**